UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*

ST. PAUL'S SCHOOL,                        \*
                                          \*
v.                                        \*  Civil No. 08-cv-202-MML
                                          \*
FRED C. CHURCH, INC.                      \*           Jury Trial Demanded
                                          \*
                                          \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*

## DISCOVERY PLAN
## Fed. R. Civ. P. 26(f)

**DATE/PLACE OF CONFERENCE:**  This plan represents modifications made

following the parties' telephone conference with the Court on December 18, 2008.

**COUNSEL PRESENT/REPRESENTING:**

Wilbur A. Glahn, III, of McLane, Graf, Raulerson & Middleton, representing St. Paul's School

William D. Chapman, of Melick Porter & Shea, LLP, representing Fred C. Church, Inc.

## CASE SUMMARY

The summary of the Theory of Liability and Theory of Defense, as well as the

description of discovery needed set forth below, are the respective statements of each

party.  Inclusion in this Discovery Plan should not be taken as an agreement by either

party as to the statement of the other.

**THEORY OF LIABILITY:**

St. Paul's School ("St. Paul's" or the "School") seeks to recover against Fred C. Church, Inc. ("Church") for damages resulting from flooding in May 2006. St. Paul's contends that Church breached a "Fee/Consulting Agreement" entered into by the parties, and under which Church contracted to provide "Property & Casualty Risk Management Services" to St. Paul's. St. Paul's further alleges that Church acted negligently in breach of its duties to St. Paul's established as a result of a long standing relationship under which Church undertook to provide risk management services to the School. St. Paul's alleges that Church breached the agreement and its duty to the School by virtue of this special relationship by failing to identify, evaluate, quantify and monitor the School's risks and to present adequate and accurate information about alternatives for procuring insurance covering those risks, including determining premiums for necessary coverage. In particular, Church failed to perform these risk management functions with regard to the risk of loss by flooding in Zone A. St. Paul's also contends that Church's actions constitute a breach of the implied covenant of good faith and fair dealing, as well as a breach of fiduciary duty.

**THEORY OF DEFENSE:**

The defendant, Fred C. Church, Inc., denies the plaintiff's claims with respect to liability and damages. Church continues to maintain that the plaintiff's complaint, as amended on November 10, 2008 in the wake of the Motion to Dismiss hearing, fails to state a cognizable claim of liability. St. Paul's seeks to hold Church liable for uninsured flood losses it sustained in May, 2006. The plaintiff claims that Church breached duties it allegedly owed as an insurance broker, as well as in its alleged capacity as a risk

- 2 -

manager and/or insurance advisor. Church denies that it breached any legal duty owed to St. Paul's School. St. Paul's School alleges that it was not adequately advised about the risk of uninsured flood loss at its campus, and/or how such property in Flood Zone A might be protected by insurance. Without limitation, in the years leading up to the flood loss, Church repeatedly advised the School, both verbally and in writing, that a "major part" of the campus was uninsured for flood damage. Church explained that coverage was available for property located in Flood Zone A through the National Flood Plan. Church asked the School whether it wished to pursue such coverage. Following an internal dialogue, the School declined to pursue obtaining flood insurance. Church believes that the School did so because the School was at that time under considerable financial pressure, as well as considerable public scrutiny with respect to the handling of its finances as a charitable entity. As such, Church expects that the insurance relationships and transactions at issue, as well as the legal status and financial history and condition of the School during the time period surrounding the flood, will be the subject of what will probably be considerable discovery in this case. It is also expected that the damages claims will be contested. Without limitation, the School has previously received insurance claim payment(s) from Travelers Insurance Company. The School also brought a separate prior action against Travelers, seeking the same damages which it now seeks to recover against Church. The School settled this action in February, 2008, and to date has declined to reveal the terms of the settlement to Church, on the purported basis of confidentiality.

**DAMAGES:**

St. Paul's claims it has sustained damages in excess of approximately $1.6 Million, exclusive of interest, costs and attorneys' fees.

**JURISDICTIONAL QUESTIONS:**

The parties do not anticipate any jurisdictional questions at this time.

**QUESTIONS OF LAW:**

Anticipated questions of law include issues of the duties owed by risk managers and insurance brokers.

**TYPE OF TRIAL:**  Jury.

**DISCOVERY**

**TRACK ASSIGNMENT:**  12 months.

**DISCOVERY NEEDED:**

St. Paul's anticipates discovery relating to:  the relationship of the School and Church; Church's knowledge of, and representations concerning, the risks of flooding at the School, alternatives for determining and obtaining coverage for losses due to flooding in Flood Zone A (including determining premiums for necessary coverage whether from private insurers or under the National Flood Insurance Program), and the steps taken by Church to identify, evaluate, quantify and monitor the risk of loss from flooding on the St. Paul's campus.

Church intends to take discovery to support its defenses with respect to liability and damages.  The subject of discovery is expected to include but not be limited to the legal duties which may apply to the parties, the history of the insurance relationships and transactions between the School, and/or Church, and/or other involved third parties

(including but not limited to the School's property insurance history, and the resolution of the underlying Travelers case), the legal status and financial history and condition of the School during the time period surrounding the flood, and the processes, procedures, and parties involved in decision making at the School with respect to insurance and financial matters.

**MANDATORY DISCLOSURES:**

Mandatory disclosures pursuant to Fed. R. Civ. P. 26(a)(1) shall be served by February 2. 2009.

**ELECTRONIC INFORMATION DISCLOSURES (Fed. R. Civ. P. 26(f)):**

The parties have discussed the production of electronic documents and believe at this time that the procedures set out in Exhibit A hereto are sufficient to address issues pertaining to the discovery and production of such documents.  The parties do not intend to require the production of electronic files in "native format."  If issues arise regarding the production of documents maintained in electronic files, the parties will address those issues as they arise.

**STIPULATION REGARDING CLAIMS OF PRIVILEGE/PROTECTION OF TRIAL PREPARATION MATERIALS:**

St. Paul's proposes that privilege issues be dealt with in accordance with Exhibit "A" hereto.

**COMPLETION OF DISCOVERY:**

The Parties propose the following deadlines with regard to discovery.

| March 2, 2009 | Formal fact discovery, both written and oral, shall begin. |
|---|---|
| December 31, 2009 | Formal fact discovery shall end.  All parties shall supplement their answers to interrogatories concerning factual matters within fifteen (15) days of the close of formal fact discovery. |

**INTERROGATORIES:**

A maximum of 25 interrogatories by each party to any other party.  Responses due 30 days after service unless otherwise agreed to pursuant to Fed. R. Civ. P. 29.

**REQUESTS FOR ADMISSION:**

The parties agree to a maximum of 50 requests for admission by each party to any other party.  Responses due 30 days after service unless otherwise agreed to pursuant to Fed. R. Civ. P. 29.  Leave of the Court shall be required to seek additional requests.

**DEPOSITIONS:**

The parties agree that each party may take up to 15 depositions, and that each deposition will be limited to a maximum of seven hours unless extended by agreement of the parties.  Leave of Court shall be required, as provided in Rule 30 of the Federal Rules of Civil Procedure, for depositions beyond the 15 depositions agreed to by the parties or to extend the time period per deposition.  The parties further agree that all disclosed experts may be deposed for the same seven-hour period.

**DATES OF DISCLOSURE OF EXPERTS AND EXPERTS' WRITTEN REPORTS AND SUPPLEMENTATIONS:**

| | |
|---|---|
| **10/01/09** | Parties with the burden of proof will submit expert reports on issues on which they bear the burden of proof pursuant to Fed. R. Civ. P. 26(a)(2). |
| **11/01/09** | Responsive expert reports pursuant to Fed. R. Civ. P. 26(a)(2). |
| **12/31/09** | All expert depositions shall be completed. |

**CHALLENGES TO EXPERT TESTIMONY:**

45 days prior to trial.

## OTHER ITEMS

**JOINDER OF ADDITIONAL PARTIES:**  None anticipated at this time.

**THIRD-PARTY ACTIONS:**  None anticipated at this time.

**AMENDMENT OF PLEADINGS:**

**Plaintiff:**  Any further amendments by February 16, 2009.  **Defendant:**

March 16, 2009.

**DISPOSITIVE MOTIONS:**

**To Dismiss:**  March 2, 2009.

**For Summary Judgment:**

| | |
|---|---|
| **01/31/10** | The last date upon which the parties may submit Rule 56 summary judgment motions on any outstanding issues.  Nothing in this Order shall preclude the parties from serving motions for summary judgment prior to this date. |

| 02/28/10 | The parties shall exchange their objections to the summary judgment motions. |
|---|---|
| 03/15/10 | The parties shall exchange their reply papers concerning the summary judgment motions. |

**SETTLEMENT POSSIBILITIES:**

Settlement possibilities cannot be evaluated at this time.

**JOINT STATEMENT RE MEDIATION:**

Mediation, if any, shall occur by June 1, 2009.

**WITNESSES AND EXHIBITS:**

| 04/01/10 | The Parties shall exchange draft pretrial orders and proposed illustrative exhibits (models, videotapes, diagrams, etc.). The parties shall thereafter meet and confer in an effort to resolve any differences. |
|---|---|
| 04/15/10 | The Parties shall deliver draft pretrial orders that identify areas of agreement and disagreement to the Court and each other. |

**TRIAL ESTIMATE:**  Six days.

**TRIAL DATE:**  May 3, 2010.

**PRELIMINARY PRETRIAL CONFERENCE:**

The parties held a pretrial conference with the Court on December 18, 2008.  This

Amended Discovery Plan is prepared following that pretrial conference.

**OTHER MATTERS:**

Church states that it may need to seek an order compelling disclosure of the

proceedings in and outcome of the underlying Travelers litigation.  St. Paul's submits that

the Travelers settlement is confidential pursuant to the agreement with the Travelers but

that if subpoenaed, it is likely that the settlement will be disclosed.

Respectfully submitted,

ST. PAUL'S SCHOOL

By its attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL ASSOCIATION

Dated:  January 2, 2009                    By:___/s/ Wilbur A. Glahn, III_____
                                                Wilbur A. Glahn, III, Bar No. 937
                                                bill.glahn@mclane.com
                                                Michael J. Quinn, Bar No. 5584
                                                mike.quinn@mclane.com
                                                Adam M. Hamel, Bar No. 17110
                                                adam.hamel@mclane.com
                                                900 Elm Street, P.O. Box 326
                                                Manchester, New Hampshire 03105
                                                (603) 625-6464


FRED C. CHURCH, INC.

By its attorneys,

MELICK PORTER & SHEA, LLP

Dated: January 2, 2009                     By:___/s/ William D. Chapman_____
                                                William D. Chapman, *pro hac vice*
                                                wchapman@melicklaw.com
                                                Maureen E. Lane, Bar No. 15152
                                                mlane@melicklaw.com
                                                Jessica M. Farrelly, *pro hac vice*
                                                jfarrelly@melicklaw.com
                                                28 State Street
                                                Boston, MA  02109
                                                (617) 523-6200

Nothing in this Order shall prevent a party, upon a showing of good cause, from obtaining relief from the provisions of this Order, either by stipulation between the affected parties and order thereon or by motion to the Court.

DATED: _January 5, 2009_     _Mary M. Lisi_
Honorable Mary M. Lisi
Judge, United States District Court for the
District of Rhode Island

**EXHIBIT A TO DISCOVERY PLAN UNDER RULE 26(f)**

**DISCOVERY AND PRE-TRIAL SCHEDULE**

I.      **Written Discovery and Production of Documents**

     A.      **Written Discovery**

          1.      Within a reasonable time before production of documents, the producing party shall advise the inspecting party of the approximate volume of the documents and a general description of the types of files involved.  The producing party shall produce, at its option, either a legible set of paper copies, or a cd containing the documents in their original format.

          2.      The parties shall use their best efforts to agree on the place and time for production.  When original documents are produced, all such documents must remain available for inspection and copying for a reasonable period of time.

          3.      Prior to the delivery of copies of documents to the requesting party, the documents shall be Bates numbered with appropriate identification of the source of the document.

          4.      All documents withheld from production on the basis of a claim of privilege or work-product immunity shall be identified in a privilege log which will be produced within thirty (30) days from the date the producing party completes its production at a specific location, regardless of whether the reviewing parties have completed their review of the produced documents.  For each document withheld, the privilege log shall contain a description of the type of document (*e.g.*, letter, memorandum), an identification number of the document, the authors' name(s), the recipients' name(s) (*e.g.*, the direct addressees' name(s)), the name(s) of all persons identified by the document as receiving copies (*e.g.*, all persons copied on the document), the date of the document, a description of the document's general subject matter or

reference line, and the legal basis for withholding the document.  Nothing herein shall prevent

any party from seeking additional information regarding any documents or categories of

documents identified in a privilege log.

   **B.**     **Misdirected Communications or Documents**

   Each party has an affirmative duty to notify immediately the involved party upon receipt

of any misdirected attorney-client or other privileged communication or work-product document

outside the ordinary course of discovery.  (Inadvertent production of privileged or protected

material during discovery is subject to the provisions of Section C below).  Upon written request,

the receiving party shall return such communication or other document and all copies of the

communication or other document to the involved party.  If the involved party requests return of

the misdirected communication or other document within twenty (20) days of notice of the

misdirection, no waiver of the applicable privilege or protection shall be deemed to have

occurred as a result of the disclosure by misdirection, and the receiving party shall not use the

information obtained by the misdirection for any purpose.

   **C.**     **Inadvertently Produced Privileged or Otherwise Protected Documents**

   If a party inadvertently produces information or documents that it considers privileged or

protected material, in whole or in part, or learns of the production of privileged or protected

material by a third party, the party may retrieve such information or documents or parts thereof,

memoranda and other material, as follows:

   1.     Within thirty (30) days of the date of discovery by a party of the

inadvertent production by it or a third party of such a document, but no later than ninety (90)

days before the trial date, the party asserting inadvertent production must give written notice to

all parties that the party claims the document, in whole or in part, to be privileged or protected

material; in addition, the notice must state the nature of the privilege or protection and the factual basis for asserting it.

        2.    Upon receipt of such notice, all parties who have received copies of the produced document shall promptly (a) return all such copies to the party asserting inadvertent production or (b) provide written assurance to the producing party that all such copies have been destroyed.  In the event that only part of the document is claimed to be privileged or protected, the party asserting inadvertent production shall furnish to all parties redacted copies of such document, removing only the part(s) thereof claimed to be privileged or protected, together with such written notice.  Upon receipt of the redacted copy, each party shall promptly (a) return all unredacted copies to the party asserting inadvertent production or (b) provide written assurance to the producing party that all unredacted copies have been destroyed.

        3.    Alternatively, a recipient of any notice pursuant to Subsection III.C.1 above may retain the document and inform the producing party within thirty (30) days of its receipt of such notice that the claim of privilege is disputed.  Any such party shall retain all copies of the document under dispute segregated from other documents in a file marked "INADVERTENT PRODUCTION - PRIVILEGE OR PROTECTION DISPUTED."  The party asserting inadvertent production shall be deemed to have waived the claim of privilege or protection unless it moves for an order confirming that the claim of privilege or protection is well-founded within thirty (30) days of receiving notice that the claim of privilege or protection is disputed.  No party may use any such document (except in connection with such a motion concerning the privileged status of the document) before the motion is resolved or the time for filing such a motion has passed and no motion has been filed.  The procedure stated in this subsection (III,C) shall be subject to any rights to recall witnesses or any rights to question

- 3 -

witnesses regarding the basis or bases for the privilege or protection, provided that in any other motion any party may refer to any pending motion to compel and any matters submitted in support of any pending motion to compel.

       4.      After service of a notice in accordance with this section claiming that a privileged or protected document was inadvertently produced, no opposition to a motion requesting confirmation of the privileged or protected nature of the document shall rely on an allegation that any privilege or protection as to the document was waived by its inadvertent production.  However, the parties reserve their rights to claim the privilege was waived due to any delay in claiming the privilege or on account of any party's detrimental reliance on a claimed privileged document inadvertently produced.

       5.      If the Court rules that the inadvertently produced document is privileged or protected, all parties shall, within thirty (30) days, either (a) return the segregated copy and any other copies in their possession or control to the party asserting inadvertent production or (b) provide written assurance to the producing party that all such copies have been destroyed.  If the Court rules that the document is not privileged or protected, or the party asserting the claim of privilege or protection waives its claim by failing to file a timely motion to confirm the privilege or protection, parties need not keep the document segregated.

       6.      The provisions of paragraphs 1-4 above are without prejudice to any other rights any party may have with respect to challenging or defending any claim of privilege.